418 P.2d 278

James P. WHITT, Plaintiff-Appellant,

v.

Dale JARNAGIN and Craig Mountain Railway Company, Defendants-Respondents.

No. 9774.

Supreme Court of Idaho.

Sept. 29, 1966.

McFadden & Park, St. Maries, for appellant.

Clements & Clements, Lewiston, for respondent, Dale Jarnigan.

E. L. Miller, Coeur d'Alene, for respondent, Craig Mt. Ry. Co.

SMITH, Justice.

This is a tort action whereby appellant seeks damages on account of his personal injuries and damages to his automobile, sustained as the result of a collision with a cow on U.S. Highway 95. Appellant, in his complaint, alleges respondents' concurrent and consecutive acts of negligence as causative of the collision, injuries and damage, and asserts joint and several liability of respondents.

On December 8, 1962, about 10:30 o'clock p. m., appellant was driving his automobile at a speed of 50 to 55 miles per hour in a northwesterly direction on U.S. Highway 95 approximately 1 and ½ miles from Winchester, Idaho. As he rounded a curve he observed a car parked atop a rise on the opposite side of the highway; the car had its lights on and was facing him. He slowed down to a speed of 10 to 15 miles per hour. A man (later identified as Cecil Uhling) was standing between the car and the road. Observing no sign of trouble and not wanting to stop because of three teen age boys in his charge, appellant began to pick up speed. About 150 to 200 feet past the parked vehicle appellant sighted some black Angus cows—four being on the left side of the road, one in appellant's lane of traffic and one at the right side of the road. Appellant immediately applied the brakes of his automobile, but was unable to stop the car before striking one of the cows, which thereby brought the vehicle to an abrupt halt. Appellant left the car with the parking lights on and walked down the highway in the direction he had been traveling in an attempt to stop an oncoming automobile and to obtain assistance. His three companions walked in the opposite direction to seek assistance; they talked with the man, Mr. Uhling, who had been standing by the parked car. Uhling told them that he had waved a flashlight to warn them of the impending danger ahead; that he, too, had hit a cow. A passing car stopped and then went for assistance.

About 30 minutes later respondent Jarnagin, owner of the cows, arrived and subsequently returned the cows to his pasture. The pasture itself is on the right hand side of U.S. Highway 95 when facing the direction in which appellant was driving. The pasture is entirely surrounded by a fence, the portion nearest the highway consisting of four strands of barbed wire; the fence, as it extends north from the highway, is composed of four strands of barbed wire and woven wire. The remainder of the pasture is surrounded by a three-strand barbed wire fence.

The railroad tracks of respondent, Craig Mountain Railway Company, extend through the pasture and intersect U.S. Highway 95 at a converging angle. At the point where the tracks converge with the fence there is a cattle guard which is about 2,000 feet from where the tracks intersect the highway. There are three gates through

the fence bordering U.S. Highway 95 and adjacent to the cattle guard. When returning the cattle to the pasture, Mr. Jarnagin noted that the gate adjacent to the cattle guard was closed and that the cattle guard had been removed and set to one side. He obtained assistance in replacing the cattle guard.

Subsequently appellant filed his complaint in which he alleged that he was unable to stop his automobile and avoid striking the animal, and that the collision caused substantial damage to his car and injury to himself; that the animals owned by Jarnagin has escaped from Jarnagin's pasture which was located within a herd district and not in open range country; that respondent railway company was making repairs to the fences and cattle guards enclosing the pasture, and that the cattle guards or gates enclosing the pasture were left in a condition which permitted the cattle to escape from the pasture; and that the escape of the animals and their presence on the highway were due to the negligence of Jarnagin or the railway company.

Respondent railway company, in its answer, generally denied the allegations of the complaint, including the allegation that the pasture was within a herd district, and asserted the defenses of contributory negligence and assumption of risk.

Respondent Jarnagin, in his answer, admitted that his pasture was within a herd district; generally denied the remainder of the allegations of the complaint, and asserted the affirmative defenses of contributory negligence and last clear chance.

As a separate defense and cross-claim respondent Jarnagin alleged that respondent railway company maintained and operated its railroad over and across the Jarnagin pasture which was enclosed by lawful fences in good repair; that the railway company, upon its right-of-way across the pasture, maintained a cattle guard which, without Jarnagin's knowledge or consent, it had removed sometime prior to December 8, 1962 so as to permit some of the Jarnagin

cattle in the pasture to wander upon the bordering U.S. Highway 95. Jarnagin then alleged that if liability existed, the railway company was solely liable to appellant; and that should Jarnagin be held liable, that he have judgment against the railway company as the primary tort feasor.

The trial court, pursuant to I.R.C.P. 42(b) ordered a separate trial of Jarnagin's cross-claim, to be held at a time subsequent to the trial of the issues raised by appellant's complaint and respondents' answers thereto.

The trial proceeded before the court, sitting with a jury. At the conclusion of appellant's case, respondent Jarnagin moved for an involuntary dismissal of the action (I.R.C.P. 41(b)), the motion being grounded upon appellant's asserted contributory negligence; also lack of application to the proven facts of the doctrine of res ipsa loquitur.

Respondent railway company moved for an involuntary dismissal of the action on the ground of failure of appellant to show negligence on the part of the railway company.

Prior to the court's rulings upon respondents' motions, appellant moved the court to reopen the case in order to permit appellant to submit evidence on two points, viz., (1) concerning the existence of a herd district in the area, and (2) concerning the knowledge, and the duty of respondent railway company to determine the existence of cattle in the pasture. Both respondents resisted the motion.

The court thereupon denied the motion to reopen. The court then granted the motions for involuntary dismissal, followed by entry of judgments of involuntary dismissal with prejudice as to both respondents, from which judgments appellant perfected this appeal.

Appellant assigns error of the trial court in granting respondents' motions for involuntary dismissal of the action, asserting that as to each respondent he established a prima facie case of negligence.

■ Under a motion for involuntary dismissal, pursuant to I.R.C.P. 41(b), testimony and all reasonable inferences therefrom must be viewed in light most favorable to the plaintiff, and the trial court should not grant the motion unless as a matter of law no recovery can be had upon any view which properly can be taken of the evidence. Whitney v. Continental Life and Accident Company, 89 Idaho 96, 403 P.2d 573 (1965); Callahan v. Wolfe, 88 Idaho 444, 400 P.2d 938 (1965); Stratton v. Stratton, 87 Idaho 118, 391 P.2d 340 (1964); Sturgis v. Garrett, 85 Idaho 364, 379 P.2d 658 (1963); Shaffer v. Adams, 85 Idaho 258, 378 P.2d 816 (1963); Smith v. Big Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146 (1961); Bancroft v. Smith, 80 Idaho 63, 323 P.2d 879 (1958); Buffat v. Schnuckle, 79 Idaho 314, 316 P.2d 887 (1957); Luis v. Ada Lodge #3, Ind. Order of Odd Fellows, 77 Idaho 392, 294 P.2d 1095 (1956); Watkins v. Watkins, 76 Idaho 316, 281 P.2d 1057 (1955); Koser v. Hornback, 75 Idaho 24, 265 P.2d 988, 44 A.L.R. 2d 1015 (1954); Nissula v. Southern Idaho Timber Protective Ass'n, 73 Idaho 37, 245 P.2d 400 (1952).

■ Actionable negligence consists of a duty or obligation of the defendant to protect the plaintiff from injury, failure to discharge that duty, and injury resulting therefrom. H. J. Wood Co. v. Jevons, 88 Idaho 377, 400 P.2d 287 (1965); Chatterton v. Pocatello Post, 70 Idaho 480, 223 P.2d 389, 20 A.L.R.2d 783 (1950). The complaint must disclose these essentials and the evidence must support them to allow recovery. H. J. Wood Co. v. Jevons, supra.

With the foregoing principles in mind, we approach appellant's first assignment, that the trial court erred in dismissing the action as to respondent Jarnagin.

Appellant caused the testimony of the general superintendent of respondent railway company to be taken by written interrogatories propounded under I.R.C.P. 33, which appellant introduced and read in evidence. Such evidence shows that the railway company's employees and agents removed the cattle guard on December 3, 1962, for purposes of snowplowing; such officer stated he did not know that cattle were in the pasture or to whom they belonged.

During the course of the trial when the interrogatories and answers thereto were being read into evidence, the court admonished the jury that the evidence so adduced would apply only to respondent railway company and not to respondent Jarnagin and further, that the jury was not to regard the evidence so adduced either for or against Jarnagin.

On this appeal, however, respondent Jarnagin seeks to apply as an adverse party in his favor the evidence adduced by virtue of those interrogatories, pointing to I.R.C.P. 26(d) (2), which permits the use of such a deposition (deposition of a party who at the time of its taking was an officer, director or managing agent of a corporation) by an adverse party for any purpose, respondent Jarnagin being an adverse party to appellant; also an adverse party as to the railway company by virtue of his cross-claim filed against the company. Moore's Federal Practice, 2nd Ed., Vol. 4, Sec. 26.-29, p. 1653.

The ruling of the trial court to the effect that the evidence so adduced could not be used for or against respondent Jarnagin, was inclusive as to all parties, was not objected to by any party, and no question concerning the ruling is presented on this appeal. Moreover, the trial court, at the commencement of the trial herein, pursuant to I.R.C.P. 42(b), ordered a separate trial of Jarnagin's cross-claim against the railway company to be held at a time subsequent to the trial of the issues raised by appellant's complaint and respondents' answers thereto; nor is any question concerning that ruling presented on this appeal.

■ However, heeding the admonition of I.C. § 1–205 upon retrial of this cause, the aforesaid deposition may be used for any purpose by respondent Jarnagin, he being an adverse party. I.R.C.P. 26(d)

(2); Moore's Federal Practice, 2nd Ed., Vol. 4, Sec. 26.29, p. 1653.

■ Appellant, in his complaint, alleged that the cattle escaped from Jarnagin's pasture which is adjacent to U.S. Highway 95, and that the pasture is not in open range country, but is located within a herd district. Jarnagin admitted that his pasture was in a herd district. Facts admitted by the pleadings need not be proved. Pendlebury v. Western Casualty and Surety Company, 89 Idaho 456, 406 P.2d 129 (1965); Cloughley v. Orange Transportation Co., 80 Idaho 226, 327 P.2d 369 (1958); Burleson v. Tucker, 78 Idaho 262, 300 P.2d 816 (1956).

Respondent Jarnagin was called as appellant's witness. Jarnagin testified that he did not ordinarily have cattle in the pasture during December, but that he turned cattle into the pasture to graze as early as March. In the year 1962, however, he turned the cattle into the pasture during the first week of May and removed them subsequently during the last week of July; that thereafter, during the last week of July or first part of August, he turned into the pasture six black Angus cows, and that the cows remained therein from that time on until and including the date of the accident on December 8, 1962; that the cattle guard is located where the railroad intersects the pasture fence, about 2,000 feet distant from where the accident occurred the night of December 8, 1962, on the adjacent highway; that when he was called to the scene of the accident, the cows, when they were returned to the pasture, "went right back down the railroad tracks," and that the cattle guard where the tracks intersected the fence was not in place; that a gate near the point

where the railroad intersects the fence was closed; that he obtained assistance and replaced the cattle guard, which was "laying off to the side of the right of way"; and that he did not know who removed the cattle guard; his further testimony showed that the pasture was well fenced and the lawfulness of the fence was not questioned. In response to a question as to whether the cattle guards were left in place throughout the year, his testimony appears:

"A I have no idea. I didn't inspect the cattle guards after I removed the cattle. They were always there when I turned the cattle back in when I would go around the fence and check that the cattle guards were in place. Whether they had been removed prior to that, I cannot say."

Respondent Jarnagin contends that under the evidence the doctrine of res ipsa loquitur as applied under I. C. § 25–2119 has no application as to him. I. C. § 25–2119 [1] relieves from negligence any person owning, or controlling the possession of, a domestic animal *lawfully* on a highway.

■ I. C. § 25–2118 [2] impliedly makes it the duty of the person owning, or controlling the possession of, the domestic animal, to keep the animal off the highway, unless the highway is on open range; and does not absolve such person from liability for damage to a vehicle or injury to a person riding therein caused by a collision between the vehicle and any such animal. In Corthell v. Pearson, 88 Idaho 295, 399 P.2d 266 (1965), it is stated:

"Appellant's land was fenced, and was located in a herd district. The burden rested upon appellant [plaintiff] under

1. "Owner or possessor of animal not liable for animal on highway.—No person owning, or controlling the possession of, any domestic animal lawfully on any highway, shall be deemed guilty of negligence by reason thereof."

2. "Animals on open range—No duty to keep from highway.—No person owning, or controlling the possession of, any domestic animal running on open range, shall

have the duty to keep such animal off any highway on such range, and shall not be liable for damage to any vehicle or for injury to any person riding therein, caused by a collision between the vehicle and the animal. 'Open range' means all unenclosed lands outside of cities, villages and herd districts, upon which cattle by custom, license, lease, or permit, are grazed or permitted to roam."

the provisions of the aforesaid sections of the statute to show that his domestic animal was lawfully on the highway; otherwise, under I. C. § 25–2119, the implied duty rested upon appellant to keep his animal off the highway, since the land was in a herd district and not on 'open range'. See Shepard v. Smith, 74 Idaho 459, 263 P.2d 985 (1953), and O'Connor v. Black, 80 Idaho 96, 326 P.2d 376 (1958), wherein was applied the doctrine of res ipsa loquitur as to animals on the highway during the nighttime." 88 Idaho at 299, 399 P.2d at 268.

█ A plaintiff seeking to invoke the doctrine of res ipsa loquitur must show: (1) that the agency or instrumentality causing the injury is under the control and management of the defendant; and (2) that the circumstances were such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence. Hale v. Heninger, 87 Idaho 414, 393 P.2d 718 (1964); Shaffer v. Adams, supra; C. C. Anderson Stores Co. v. Boise Water Corporation, 84 Idaho 355, 372 P.2d 752 (1962).

█ "* * * The application of the doctrine of res ipsa loquitur does not shift the burden of proof to the defendant. It merely shifts to the defendant the obligation to produce evidence to explain or rebut the inference of negligence raised by the application of the doctrine." C. C. Anderson Stores Co. v. Boise Water Corporation, 84 Idaho 355, 360, 372 P.2d 752, 754 (1962). See also Skaggs Drug Centers, Inc. v. City of Idaho Falls, 90 Idaho 1, 407 P.2d 695 (1965); 38 Am.Jur. Negligence § 295, p. 989.

Applying the first requisite of the doctrine to the case at bar, the black Angus cow upon the highway in the nighttime of December 8, 1962, was the agency or instrumentality causative of the accident and injury and was owned by, and under the control and management of, respondent Jarnagin.

As to the second element of the doctrine, not only did respondent Jarnagin have the burden of proving, which he did not, that the animal was lawfully on the highway, since it was in a herd district and not kept on unenclosed land or open range, I. C. §§ 25–2118 and 25–2119; Corthell v. Pearson, supra; but he did not come forth with any explanation, other than the fact that he had no knowledge of the removal of the cattle guard and the presence of the animal on the highway at said time and place.

█ Implicit in his duty to keep his animals off the highway was the duty to make reasonable inspections of the fences and barriers enclosing the pasture for the purpose of ascertaining that they were in repair and in place, and adequate to restrain the cattle therein, and off the highway. The fact that another may have removed the cattle guard without his knowledge would not absolve him of his duty in the premises. From Jarnagin's own testimony it may be inferred that he did not inspect the cattle guards after he removed the cattle the latter part of July or forepart of August, 1962, nor until the night of December 8, 1962. He, of course, knew that his cattle were in the pasture and that the cattle guards protected his fence where it intersected the railroad.

█ We entertain the view that appellant fully met the second requisite of the doctrine of res ipsa loquitur. Appellant established a prima facie case of negligence against respondent Jarnagin; therefore, the trial court erroneously granted the motion of involuntary dismissal as to Jarnagin.

We now turn to appellant's assignment that the trial court erroneously granted respondent Craig Mountain Railway Company's motion for involuntary dismissal of the action.

Appellant's written interrogatories addressed to the superintendent of the railway company and the answers of such officer established that the company, through its employees and agents, removed the cattle guard on December 3, 1962, in aid of clear-

ing the railroad tracks of snow by use of a snowplow. That was five days before the accident on December 8th, on which date, during the nighttime and after the accident, the guard had not been replaced. While the superintendent stated his lack of knowledge of the presence of cows in the pasture during such time, nevertheless the animals were in the pasture continuously from the latter part of July or forepart of August until and including December 8, 1962, the date of the accident. Moreover, the railroad is in fairly close proximity of, and at a converging angle intersects, U. S. Highway 95; and the cattle guard was within some 2,000 feet from the place on the highway where the accident occurred. When the cattle were returned to the pasture after the accident, they "went right back down the railroad tracks" to the pasture; also, the pasture gate near the cattle guard fence opening, was closed.

Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury. 65 C.J.S. Negligence § 4(3); Toone v. Adams, 262 N.C. 403, 137 S.E.2d 132 (1964); Missouri-Kansas-Texas Railroad Company v. Ingram, 322 F. 2d 286 (10 Cir.1963); Waynick v. Chicago's Last Department Store, 269 F.2d 322, 77 A.L.R.2d 1260 (7 Cir.1959); Hamilton v. Ross, 304 S.W.2d 812 (Mo.1957); De Ark v. Nashville Stone Setting Corporation, 38 Tenn.App. 678, 279 S.W.2d 518 (1955). The

degree of care to be exercised must be commensurate with the danger or hazard connected with the activity. Rasmussen v. Gem State Packing Company, 83 Idaho 198, 360 P.2d 90 (1961); Splinter v. City of Nampa, 70 Idaho 287, 215 P.2d 999, 17 A.L.R.2d 665 (1950).

From the evidence adduced a jury could have concluded that respondent railway company, its employees and agents, knew, or should have known, of the presence of the cattle in the pasture; that the removal of the cattle guard with its proximity to the highway would be conducive of permitting the cattle in the pasture to stray therefrom and onto the highway, thereby to create the hazard which led to the accident and injury. The trial court therefore erred in granting respondent railway company's motion for involuntary dismissal of the action.

In light of our disposition of appellant's assignments of error relative to the granting of respondents' motion for involuntary dismissal, we deem it unnecessary to consider appellant's remaining assignment, that the court erred in failing to grant his motion to reopen the case for the purpose of allowing further testimony.

The judgment is reversed and the cause remanded with instructions to grant a new trial.

Costs to appellant.

McFADDEN, C. J., and McQUADE, TAYLOR and SPEAR, JJ., concur.