600 P.2d 132

John E. CUNNINGHAM and Georgia C. Cunningham, husband and wife, Plaintiffs, Respondents, and Cross-Appellants,

v.

Mary BUNDY and Eugene Bundy, Defendants, Appellants, and Cross-Respondents.

Nos. 12917, 13055.

Supreme Court of Idaho.

Sept. 20, 1979.

---

2. The judgment in this case was entered prior to *Pichon.*

Michael J. Verbillis, Coeur d'Alene, for plaintiffs-respondents and cross-appellants.

James W. Atwood, Coeur d'Alene, for defendants-appellants and cross-respondents.

BISTLINE, Justice.

On August 17, 1975, at about 8:15 p. m., plaintiff Georgia Cunningham was a passenger in a car being driven by her brother on a public highway along the Coeur d'Alene River in Shoshone County. Just after passing the Mary Bundy property, the car was struck by Eugene Bundy's horse which had gotten out of its fenced pasture and, apparently spooked, unsuccessfully attempted to jump over the passing car.

It was undisputed that: 1) plaintiff suffered a compression fracture of the second lumbar vertebra, resulting in some disability and medical expenses of $1,380.11; 2) the area in question was a herd district, Title 25, Chapter 24, I.C.; and 3) defendant Eugene Bundy owned the horse.

Plaintiff testified that at the time of the accident she was working with handicapped children, earning $1.60 per hour for 4 hours a day, but afterwards she could not work for over a year because she could not commute the 74 miles round trip. Plaintiff hence claimed lost wages of $2,080 ($6.40 per day times 5 days per week times 65 weeks). She also testified to having noticed that the gate to the Bundy property was open as they drove past.

Defendants did not contest the plaintiff's injuries; rather, they argued that I.C. § 25-2408 requires proof of negligence before liability can be imposed, and that they were not negligent. Although Mary Bundy owned the property, her son Eugene owned and cared for the horse. They claimed the gates were closed on the night in question and said they had checked when a visitor left, as they always did. They stated that the fences were always checked when the dogs were taken out and that they had all been in good repair that day. Eugene Bundy testified that the fence to the first pasture (where cattle were kept) was knocked *inward* and the gate from there to the second pasture (where the horse was kept) was open. The cattle as well were later found outside. He stated his belief that elk or moose had knocked the fence and gate down. In his deposition he had stated he had no idea how the horse got out; at trial he tried, with limited success, to explain this change of opinion.

On this testimony the district court held that defendant Mary Bundy was not responsible and on her motion the action against her was dismissed. Judgment was entered for plaintiff against Eugene Bundy for $6,380.11, this being medicals plus $5,000 for pain and suffering. Lost wages were denied on the grounds that the operating costs for the 74 miles round trip exceeded the $6.40 plaintiff would earn, and the work was essentially charitable in nature. Defendant Eugene Bundy has appealed the judgment against him, claiming that the inference that he was negligent has been overcome.

Respondent contends that the judgment is sustained by this finding:

"The Court further finds that the plaintiff was free of any negligence and the defendant Eugene Bundy was negligent in that the accident would not have hap-

pened but for the negligence of the defendant in permitting the horse to be unlawfully on the roadway within the boundaries of the herd district, which raises an inference of negligence on the defendant Eugene Bundy, and the defendant Eugene Bundy wholly failed to sustain his burden of showing that he was free from negligence in permitting said horse to be on said roadway at said time and place."

Given these specific findings,[1] our review is narrowed to a consideration of the applicable law.

"Appellant's land was fenced, and was located in a herd district. *The burden rested upon [defendant]* under the provisions of the aforesaid sections of the statute *to show that his domestic animal was lawfully on the highway*; otherwise, under I.C. § 25-2119, the implied duty rested upon appellant to keep his animal off the highway, since the land was in a herd district and not on 'open range.' See *Shepard v. Smith*, 74 Idaho 459, 263 P.2d 985 (1953), and *O'Connor v. Black*, 80 Idaho 96, 326 P.2d 376 (1958), wherein was applied the doctrine of res ipsa loquitur as to animals on the highway during the nighttime.

. . . .

"The law itself supplies the presumption that the animal was unlawfully on the highway at the time and place of the collision unless satisfactorily explained by the owner. Whether appellant did or did not satisfactorily explain the animal's presence upon the highway as being lawful at the time and place of the collision, in the light of the evidence, was for the trier of the facts; and the trier of the facts resolved that issue in favor of respondent and against appellant."

*Corthell v. Pearson*, 88 Idaho 295, 298–300, 399 P.2d 266, 268–271 (1965).

---

1. Bundy at trial testified that he thought an elk or a moose was responsible for knocking the fence down, but he admitted that he had no knowledge that this was so. In addition, the trial court may have considered it as impeached to some extent by the fact that Bundy had not suggested this or any explana-

tion at his deposition prior to trial. He was also contradicted by the testimony of plaintiff's brother, the driver, that moose and elk simply jump over fences rather than knocking them down; he also stated he had seen Bundy's horse out on the road several times.

Similarly, in *Whitt v. Jarnagin*, 91 Idaho 181, 418 P.2d 278 (1966):

"[N]ot only did respondent Jarnagin have the burden of proving, which he did not, that the animal was lawfully on the highway, since it was in a herd district and not kept on unenclosed land or open range, I.C. §§ 25–2118 and 25–2119; *Corthell v. Pearson,* supra; but he did not come forth with any explanation, other than the fact that he had no knowledge of the removal of the cattle guard and the presence of the animal on the highway at said time and place."

*Id.* at 187, 418 P.2d at 284.

The trial court's legal conclusions are in conformity with the principles of the foregoing cases. See also *Safford Animal Hospital v. Blain,* 119 Ariz. 296, 580 P.2d 757 (App.1978).

■ We have examined the record and conclude that the factual findings made by the trial court are supported by substantial and competent evidence and will not be disturbed on appeal. *Heckman Ranches, Inc. v. State, By and Through Department of Public Lands,* 99 Idaho 793, 589 P.2d 540 (1979); *Lewis-Clark Memorial Gardens v. City of Lewiston,* 99 Idaho 680, 587 P.2d 821 (1978); *Isaacson v. Obendorf,* 99 Idaho 304, 581 P.2d 350 (1978). The credibility of witnesses and the weight to be afforded their testimony, together with proper inferences to be drawn therefrom, was a question within the province of the trier of facts. *Comish v. Smith,* 97 Idaho 89, 540 P.2d 274 (1975); *Pierson v. Sewell,* 97 Idaho 38, 539 P.2d 590 (1975).

Plaintiffs on their cross-appeal assign as error the trial court's decision denying them I.C. § 12–121 attorney fees. The first judgment entered in district court was for the amount of plaintiffs' judgments only. A supplemental judgment was thereafter entered for the amount of the first judgment plus costs.

■ Attorney fees, although allowable at that time under I.C. § 12–121, were entirely discretionary with the trial court, and we are not persuaded that there was any abuse of that discretion. The trial court gave a reasoned statement for not awarding attorney fees:

"[A]nd the Court being of the opinion that attorney's fees should only be awarded against the unsuccessful litigant when a defense or claim is offered in bad faith or to delay or hinder justice or in other circumstances indicative of bad faith, and the Court being satisfied that Defendants' defense was a bona fide defense and the Court having considered evidence of both counsel,

"IT IS THEREFORE ORDERED that the costs other than attorney's fees in the amount of $475.15 are allowed."

See *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979), an opinion released after the briefing in this case.

■ Plaintiffs contend that defendant did not timely object to the cost bill, which included their request for attorney fees. "Failure to timely object to the items in the memorandum of costs shall constitute a waiver of all objections to the costs claimed." I.R.C.P. 54(d)(6). Before any order was entered relating to attorney fees, the plaintiffs conceded that the cost bill though mailed had not been received, and the court allowed the defendant an opportunity to be heard before passing on the request. Under these circumstances, the trial court's discretion had to be invoked, which it was, and we see no error in the procedure or in the ruling.

Judgment affirmed. Respondents may recover their costs, but no attorney fees on the appeal.

DONALDSON, C. J., and SHEPARD, BAKES and McFADDEN, JJ., concur.